UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                                  Chapter 11

    HPA Northridge LLC                                    Case no.  16-13376

          Debtor.
------------------------------------------------------------x

## OBJECTION TO LIFT STAY, DISMISSAL AND ABANDONMENT MOTION

HPA Northridge LLC (the "Debtor"), as and for its objection to the motion

("Motion") made by Lawrence D. Johnson, Trustee of the SJ Trust dated November 24, 1999

and ("SJ Trust") and William P. Johnson, Trustee of the DJ Trust dated November 24, 1999 (the

"Movant") for an order lifting the automatic stay, dismissing this case, or compelling

abandonment of the Debtor's real property, respectfully represents as follows:

(a) **The Debtor's objective is to sell or refinance its Property under its pending plan to preserve value for its creditors and owner,**

(b) **The Debtor has paid the Movant debt service at the default interest rate both pre-petition and post petition,**

(c) **The Debtor has a recent letter of intent to purchase the Property at $3.1 million, $500,000 more than all creditor claims in the estate,**

(d) **The Debtor has a pending Chapter 11 Plan that will pay all creditors in full either by refinance or sale of the Property,**

(e) **The Movant has proffered no appraisal, nor other creditor evidence of value, and so failed to carry its burden to establish cause to lift the automatic stay, dismiss this case or compel abandonment, based upon lack of adequate protection, inability to reorganize, or that the Property is burdensome to the Debtor's estate.**

## BACKGROUND

1.      On December 2, 2016, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

2.      The Debtor owns the real property at 2934 No Hill Street, Meridian, MS 39305 the "Property").

3.      The property is a strip mall of about 73,000 square feet pictured below:



4.      The Property is encumbered by a $2,579,000 deed of trust lien held by the Movant.  The Debtor's unsecured debt consists of insider loans, tenant obligations and legal fees for a total of about $66,179.

5.      The Movant's note matured on August 7, 2015.  To pay the note at maturity, the Debtor tried to refinance or sell the Property.  But the Debtor's lease to Southern Family Markets, the Property's anchor tenant, expires in September 2017.  The Debtor's

attempts to refinance or sell were unsatisfactory without knowing whether the anchor tenant

would renew.

6.      With only the minimum required notice, (which did not include notice to

the Debtor), the Movant scheduled the Property for sale on December 5, 2016.  The Debtor filed

this petition to avoid a forced sale and instead to refinance or sell the Property in any orderly

manner, and confirm a Chapter 11 Plan.

7.      Based upon a pre-petition broker estimate, the property value was

$4,278,992.  Since filing this case, the Debtor believed it had reached an agreement in principle

with the anchor tenant to renew, but the tenant reneged.  The anchor tenant's failure to renew

may affect value.  The Debtor still seeks to refinance the Property and pay all creditors in full in

cash with interest under the Plan.  If refinancing is not successful, then the Debtor will sell the

Property.

8.      Either way, nonpayment of creditors does not appear to be a serious risk.

Recently, the Debtor received a verbal offer followed by a proposed non-binding term sheet to

purchase the Property for $3,100,000 (Exhibit A).  That offer is not contingent on the anchor

tenant renewing its lease.  At $3,1000,000, a sale will pay creditors in full under the Debtor's

Plan.

9.      In the meantime, the Debtor has continued to operate the Property, and has

paid debt service at the default rate plus monthly escrows for real estate taxes and insurance both

pre-petition and post-petition.  The only default on the note and deed of trust is payment at

maturity.

3

**ARGUMENT**

10.     The lift stay motion should be denied under section 362(d)(1) of the Code because the Movant is adequately protected by monthly debt service and by the equity cushion that exists in the Debtor's real property. *See In re AMR Corp.*, 490 BR 470, 478 (S.D.N.Y. 2013) ("It is well settled that an equity cushion can be sufficient, in and of itself, to constitute adequate protection . . . Accordingly, the equity cushion in the instant case—which all parties agreed was 'north of twenty percent' of the collateral . . . was a sufficient basis upon which to deny the Trustee's 363(e) motion . . .") (citations omitted); *In re Worldcom, Inc.*, Case No. 02-13533, 2003 WL 22025051, at *5 (Bankr. S.D.N.Y. Jan. 30, 2003) (". . . courts have recognized that an equity cushion can provide adequate protection"); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("It is beyond cavil that an equity cushion can, under certain circumstances, serve as a form of adequate protection").

11.     The Movant has proffered no appraisal, nor alleged with specificity that it lacks an equity cushion.  And the offer to purchase the Property for $3,100,000 suggests the Mortgagee is adequately protected by the Property's equity cushion.

12.     The Movant merely alleges that common sense dictates that its collateral is declining in value.  Even if the Court accepts Movant's opinion on real estate valuation, Movant has still not established, let alone credibly alleged, that it is not adequately protected by the remaining equity cushion at the reduced value.  Again, the $3.1 million offer to purchase with no assurance of an anchor tenant lease, suggests that the Movant still has a big equity cushion.

13.     In summary, the Movant has failed to carry its burden under section

362(g) of the Code to proffer evidence that it lacks adequate protection based on the decline in

the value of the Property.

14.     Movant's second argument is that the Debtor is behind on operating

reports.  All operating reports have since been filed, and each operating report shows that the

Movant has been paid debt service at the default rate since the note matured, including during all

post-petition periods.

15.     In *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d. Cir. 1990), the Second

Circuit identified 12 possible bases for stay relief under the "for cause" standard of section

362(d)(1).  The essence of the Sonnax factors is to determine whether the Bankruptcy serves a

legitimate purpose under the Bankruptcy Code.  The Debtor's case was filed to avoid a forfeiture

through a foreclosure sale to maximize the return to creditors and owners.  The general *Sonnax*

rule does not justify stay relief.

16.     On the specific Sonnax factors, (1) stay relief would *not* resolve the

prejudice to creditors by way of a forfeiture, (2) stay relief would *deprive* the Debtor of its

attempt to use the bankruptcy case to reorganize; (3) the Movant's foreclosure does *not* involve

the debtor as a fiduciary; (4) the foreclosure is *not* a subject to a specialized tribunal; (5) there is

*no* insurer that has assumed full responsibility for defending the Debtor on the foreclosure; (6)

the foreclosure does *not* primarily involves third parties; (7) the foreclosure will *prejudice* the

interests of other creditors because, again, it will deprive the Debtor of a bankruptcy remedy for

an impending forfeiture; (8) equitable subordination is not relevant at; (9) the Movant's lien

5

rights are fully preserved under the Bankruptcy Code; (10) the interests of judicial economy and

the expeditious and economical resolution of litigation, when balanced against the termination of

the Debtor's rights under the Bankruptcy Code suggest that stay relief should be denied; (11)

there is no litigation to be tried so this factor does not apply; and (12) the balance of harms

weighs heavily in favor of the Debtor because lifting the stay denies the Debtor the right to

reorganize.

17.     The Movant has not established "cause" to lift the automatic stay under

section 362(d)(1) of the Bankruptcy Code.

18.     §362(d)(2) of the Bankruptcy Code provides that relief from the automatic

stay "may be granted- with respect to a stay of an act against property under subsection (a) of

this section, if-(A) the debtor does not have equity in such property; and (B) such property is not

necessary to an effective reorganization."

19.     Since the Property has equity, the Property will generate a surplus in an

arms-length sale, or preserve the Debtor's equity by refinancing.  That is "essential" to an

effective reorganization of the Debtor's affairs. *United Savings Association of Texas v. Timbers

of Inwood Forest Associates. Ltd.*, 484 U.S. 365 (1988).

20.     Significantly, under section 362(d)(2), the Debtor is not required to satisfy

conclusively that any particular plan will be confirmed.  The Debtor is not even required to show

"the probability of a successful reorganization or that their plan on file is confirmable." *In re

Ledgemere Land Corp..* 125 B.R. 58, 64 (Bankr. D.Mass. 1991).  Section 362(d)(2) subjects to

scrutiny only the Debtor's general ability to reorganize.  Id at 65. *Accord, In re Terrace Gardens Park Partnership*, 96 B.R. 707,712 (Bankr. W.D. Tex. 1989).

21.    Here, the Debtor has established the general ability to reorganize. The Debtor's Disclosure Statement hearing will be heard on the same day as this motion.

22.    For the same reasons that the lift stay motion should be denied, the dismissal motion should be denied because the Debtor has failed to establish "the absence of a reasonable likelihood of rehabilitation" as required by section 112(b)(4)(A).

23.    Unlike *In re E. 81st, LLC*, No. 13-13685 (SMB), 2014 WL 4548551 (Bankr. S.D.N.Y. Mar. 17, 2014) which the Movant cited to support dismissal, the Movant has failed to proffer appraisal evidence that the Property is underwater.  Nor has Movant demonstrated that the Debtor has no viable business.

24.    Unlike the *E. 81st* debtor, the Debtor has paid debt service at the default rate of interest both before and during this case.

25.    In summary, the Movant has failed to produce evidence that cause exists to dismiss, and it is premature to conclude that the Debtor's anchor tenant will not renew, that a new tenant cannot be found, or that the Property cannot be sold for an amount sufficient to pay all creditors in full in cash under the Debtor's plan.  By the same token, there is no basis to conclude that the Debtor's Property is burdensome to the estate and must be abandoned.

7

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Motion be denied, and

that the Bankruptcy Court grant such other relief as may be just and proper.


Dated: New York, New York
   August 3, 2017


        **BACKENROTH FRANKEL & KRINSKY, LLP**
        **Attorneys for Debtor**


     By:  s/Mark Frankel
        800 Third Avenue
        New York, New York 10022
        (212) 593-1100

8

# *LETTER OF INTENT*

**Re: Offer for the purchase of the North ridge plaza , north hills meridian, Mississippi & hereinafter referred to as the "Property":**

**Pasha Retail , LLC  and/or Related Assignee(s)  ("Buyer")**

**Dear Mr. Beeler:**

**For your consideration please find the following Letter of Intent for the above referenced Property.  This letter set forth the general terms and conditions for the proposed acquisition of the Property, but shall remain non-binding:**

**1.   Purchase Price:  $ 3,100,000.00**

**2.   Conditions:  The transaction shall be subject to Buyer's review of the following items ("Due Diligence Items"):**
   **a.  Executed leases between Tenants and the Seller;**
   **b.  Title Commitment and exception documents;**
   **c.  All Environmental Reports in Seller's possession; and**
   **d.  Survey.**
**The above referenced due diligence items shall be delivered to Buyer within seven (7) days of the execution of a Purchase and Sale Agreement ("Purchase Agreement").   There may be additional due diligence required that may be added to the Purchase Agreement.**

**Buyer shall have thirty (30) days from the later of receipt of the Due Diligence Items ("Due Diligence Period") to review and approve the same for the Property.  If Buyer notifies Seller prior to the expiration of the Due Diligence Period that it has elected to terminate the Purchase Agreement, the Purchase Agreement between Buyer and Seller shall be null and void, and Buyer and Seller shall have no further obligations there under.**

**3.  Deposits:  Upon execution of the Purchase Agreement, Buyer will deposit $30,000.00 with <u>Title company of seller's choice </u>as an earnest money deposit.**

**4.  Closing Costs:   seller will pay all closing costs including the base premium of the Owner's Title Policy, any endorsements to the Owner's Title Policy, the cost of the Mortgagee Title Policy, and the cost of any new or updated survey.**

**5.  Loan Contingency:  yes**

**6.  Closing Date:  90 Days after Due Diligence Period**

**7.  Commission:  Commission shall be per the terms of the separate Representation Agreement between Seller and Advance Realty Company.**

**Any additional terms not stated herein shall be further defined in any subsequent Purchase and Sale Agreement between Buyer and Seller.**

**This letter is an expression of interest in Seller's and Buyer's mutual intent and will constitute a non-binding agreement while Seller and Buyer make a good faith, diligent effort to complete and execute a mutually acceptable Purchase and Sale Agreement on the Property that reflects the basic terms contained in this letter.**

**Sincerely,**

*Azhar Pasha*                                                        8/2/2017
_____                    _____
**Buyer**                                                                **Date**


**Agreed and Accepted:** _____

**Seller's Authorized Agent**                                        **Date**